**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : | |
| CHARLES SMITH, | : | |
| Appellant | : | No. 2985 EDA 2022 |

Appeal from the Judgment of Sentence Entered August 19, 2022
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0002341-2021

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : | |
| CHARLES SMITH, | : | |
| Appellant | : | No. 2986 EDA 2022 |

Appeal from the Judgment of Sentence Entered August 19, 2022
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0002342-2021

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : | |
| CHARLES SMITH, | : | |
| Appellant | : | No. 2987 EDA 2022 |

Appeal from the Judgment of Sentence Entered August 19, 2022
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0002343-2021

BEFORE: BOWES, J., NICHOLS, J., and KING, J.

MEMORANDUM BY BOWES, J.:                    **FILED OCTOBER 11, 2023**

Charles Smith appeals *nunc pro tunc* from his aggregate judgment of sentence of twenty to fifty years of imprisonment, followed by nineteen years of probation, imposed after he was convicted of third-degree murder, third-degree murder of an unborn child, driving under the influence ("DUI"), homicide by vehicle while DUI, homicide by vehicle, aggravated assault by vehicle, and recklessly endangering another person. We affirm.

The trial court offered the following summary of the evidence underpinning Appellant's convictions:

> [O]n May 13, 2020, at approximately 9:40 p.m., Anthony O'Connor was driving his silver Nissan SUV on Whitaker Avenue, with his girlfriend, Kimberly Hartz in the passenger seat. They were expecting their first child—[Ms. Hartz] was five months pregnant. Appellant was driving his gold Acura on Whitaker Avenue as well, with his girlfriend, Sabrina Herbert, in the passenger seat. [Appellant] was smoking a PCP cigarette. Appellant started to drive faster, and Ms. Herbert told him to slow down. Instead, [Appellant] sped up even more. Appellant then started tailgating the car in front of him then, abruptly swerving into the next lane pas[t] that vehicle. [Appellant] struck the rear of [Mr.] O'Connor's car with such force that [it] hit a series of parked cars, ending up with the passenger side of [Mr.] O'Connor's vehicle wrapped around a PECO pole. [Appellant]'s vehicle spun out of control, stopping about a half block away. Mr. O'Connor died instantly. [Ms.] Hartz suffered a number of serious injuries, including the loss of her right leg, a fractured pelvis, fractures along her spine and face. Ms. Hartz's uterus had to be removed as well.
>
> Nicole Guinan, an off-duty police officer[,] was driving along Whitaker Avenue at the time of the crash. When she looked in her rear-view mirror, she saw [Appellant]'s gold Acura spinning out of control. Officer Guinan exited her vehicle to render assistance to the occupants of the gold Acura, helping [Appellant] out of the driver's seat of the car. She noticed [Appellant]'s

demeanor, the blank stare on his face, completely dazed, foaming at the mouth, huffing and puffing, agitated—so much so that she stepped away from him out of caution and fear.  [Appellant] was walking around with his pants at his ankles.  On-duty police officers arrived and placed him under arrest.  The toxicology report of blood taken from the defendant that evening shows cocaine, marijuana and more than 80 nanograms of PCP in [A]ppellant's blood.  [Toxicology also revealed that Mr. O'Connor had fentanyl in his blood at his time of death.  Nonetheless, a]n accident reconstructionist laid full blame for the accident upon [Appellant].

Trial Court Opinion, 1/5/23, at 3-4 (cleaned up).

Appellant was tried at the above-captioned docket numbers and convicted on June 10, 2022.  Following a presentence investigation ("PSI") and a psychiatric evaluation, the trial court sentenced him to the aggregate term indicated above.  Appellant's timely post-sentence motions were denied without a hearing on August 30, 2022.  Appellant did not initially file an appeal, but his direct appeal rights were promptly reinstated through a Post Conviction Relief Act petition.  These timely *nunc pro tunc* appeals at each docket number followed, and both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant presents the following questions for our determination:

I.      Whether . . . Appellant's convictions are against the weight of the evidence where the accident was investigated inadequately by police officers not trained in homicide investigations, where the physical evidence demonstrated that the accident did not happen the way alleged by the Commonwealth, where the decedent driver was intoxicated with high levels of fentanyl and where the Appellant was not a direct cause of death when the actions of the decedent played an independent, important and overriding role in bringing about his own death, the death of the unborn child and the serious injury to his passenger?

II. Whether the court abused its discretion at sentencing when it sentenced. . . Appellant to an aggregate sentence of 20-50 years plus 19 years of probation and where the court failed to give the proper weight to the mitigating factors set forth in the pre-sentence investigation report, the mental health evaluation and by . . . Appellant's allocution at the sentencing hearing?

Appellant's brief at 6 (cleaned up).

Appellant first contends that the verdicts are against the weight of the evidence. The following law applies to our consideration of that claim:

A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court. Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence.

*Commonwealth v. Arias*, 286 A.3d 341, 352 (Pa.Super. 2022) (cleaned up). Accordingly, our task is to determine whether the trial court, in ruling on Appellant's weight challenge, "abused its discretion by reaching a manifestly unreasonable judgment, misapplying the law, or basing its decision on partiality, prejudice, bias, or ill-will." *Commonwealth v. Clay*, 64 A.3d 1049, 1056 (Pa. 2013) (cleaned up).

The trial court explained its rejection of Appellant's weight claim as follows:

Appellant contends that the decedent's ingestion of fentanyl was the direct cause of his death. The problem with his contention is there is not a scintilla of evidence to substantiate this claim. The decedent was driving northbound on Whitaker Avenue, when the speeding, inebriated [Appellant] came up from behind and struck the decedent's car from the rear. Nothing the decedent did caused the accident, nor his death or that of his unborn child. This court applied the appropriate standards when reviewing [Appellant]'s claim that the verdict was against the weight of the evidence. Having reviewed the entire record, including a thorough reading of the trial transcripts and admitted exhibits, this court concludes that the verdict was not so contrary to the evidence as to shock one's sense of justice, nor was it so tenuous, vague and uncertain that it shocks the conscience of the court. To the contrary, the evidence in this case was compelling and substantial, and strongly supported the verdict.

Trial Court Opinion, 1/5/23, at 13-14.

Appellant argues that the verdict is shocking "for a variety of reasons." Appellant's brief at 18. He highlights what he perceives as inadequacies in the investigation of the crime, avers that "the crash did not happen as the Commonwealth alleged," and proffers an alternate accident reconstruction in which Mr. O'Connor, under the influence of fentanyl, initiated the collision. *Id*. at 19. Appellant further asserts that the Commonwealth's expert failed to relate Appellant's intoxication, confirmed by a blood draw hours after the accident, back to the time of the collision. *Id*. Overall, Appellant's argument is that "[t]he verdict is shocking because the jury disregarded evidence that the decedent's intoxication and recklessness were the actual cause[s] of the crash, and not that of . . . Appellant." *Id*.

Our examination of the certified record reveals that the trial court did not deny Appellant's weight claim by "reaching a manifestly unreasonable

judgment, misapplying the law, or basing its decision on partiality, prejudice, bias, or ill-will." ***Clay***, ***supra*** at 1056. Rather, Appellant asks this Court to make different credibility determinations and weigh the evidence more favorably to him than the jury did, which is in contravention of our standard of review. Consequently, Appellant's weight claim fails.

Appellant remaining challenge is to the discretionary aspects of his sentence. Initially, the following legal principles govern our consideration of this claim:

> An appellant is not entitled to the review of challenges to the discretionary aspects of a sentence as of right. Rather, an appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction. We determine whether the appellant has invoked our jurisdiction by considering the following four factors:
>
>> (1) whether appellant has filed a timely notice of appeal; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence; (3) whether appellant's brief has a fatal defect [pursuant to] Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code.

***Commonwealth v. Lucky***, 229 A.3d 657, 663–64 (Pa.Super. 2020) (cleaned up).

Appellant filed a timely notice of appeal, preserved his issues in a timely post-sentence motion, and included a Rule 2119(f) statement in his brief. In the statement, Appellant asserts that his aggregate sentence is excessive and manifestly unreasonable under the circumstances, and that the trial court

"failed to give due consideration to . . . Appellant's mitigating circumstances." Appellant's brief at 16.

Appellant's claim that the trial court did not adequately consider the mitigating circumstances does not raise a substantial question. *See*, *e.g.*, *Commonwealth v. Radecki*, 180 A.3d 441, 469 (Pa.Super. 2018) (collecting cases). However, his contention that the aggregate sentence is manifestly unreasonable does raise a substantial question for our review. *See*, *e.g.*, *Commonwealth v. Williams*, 69 A.3d 735, 740 (Pa.Super. 2013).

Therefore, we turn to the merits of Appellant's claim, mindful of the following. "When reviewing sentencing matters, this Court must accord the sentencing court great weight as it is in the best position to view the defendant's character, displays of remorse, defiance or indifference, and the overall effect and nature of the crime." *Commonwealth v. Edwards*, 194 A.3d 625, 637 (Pa.Super. 2018) (cleaned up). "We cannot re-weigh the sentencing factors and impose our judgment in the place of the sentencing court." *Commonwealth v. Macias*, 968 A.2d 773, 778 (Pa.Super. 2009). Instead, we review the trial court's sentencing determination for an abuse of discretion.

> In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Antidormi*, 84 A.3d 736, 760 (Pa.Super. 2014).

While broad, "the trial court's discretion is not unfettered." ***Commonwealth v. Coulverson***, 34 A.3d 135, 144 (Pa.Super. 2011). The sentence imposed "should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S. § 9721(b). "Where the sentencing court had the benefit of a [PSI] we can assume the sentencing court was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." ***Commonwealth v. Hill***, 210 A.3d 1104, 1117 (Pa.Super. 2019) (cleaned up).

Here, as noted above, the trial court's sentence was informed by a PSI and a mental health evaluation, such that we presume that the court was aware of all the pertinent information about Appellant's history, character, and condition, including his prior record score of five. The court considered the sentencing guideline recommendations for the various offenses, including the standard range minimum of sixteen to twenty years of incarceration for the murder conviction. Upon review of this information, as well as "all of the testimony and arguments of counsel," the court "imposed a sentence within the applicable guideline range[.]" Trial Court Opinion, 1/5/23, at 16.

Appellant argues that, given his age of forty-five at the time of sentencing, the sentence is unduly harsh because it "amounts to a *de facto* life sentence where the Legislature did not intend to impose a life sentence

for defendants similarly situated to . . . Appellant." Appellant's brief at 20. He maintains that "[t]he sentence is manifestly unreasonable because the sentencing court did not give due weight to the victim's role in bringing about the crash." *Id*. at 21. Therefore, Appellant asserts that "he should be resentenced consistent with the norms underlying the Sentencing Code." *Id*.

As with his first claim, Appellant ignores our standard of review and instead asks us to re-weigh sentencing factors in his favor. He has pointed to nothing in the record to suggest "that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision" in imposing standard range sentences for his many offenses that resulted in two deaths and the horrific injuries of the survivor. *Antidormi*, *supra* at 760. Indeed, his contention that middle-aged offenders cannot receive standard-range sentences for third-degree murder because they amount to life sentences is preposterous.[1] Furthermore, the court imposed a substantially shorter sentence than the forty to eighty years sought by the Commonwealth on the basis that Appellant not only showed no remorse for his actions, but blamed

---

[1] Moreover, as the Commonwealth notes, Appellant will be eligible for parole at age sixty-five, which is an age this Court has held does not amount to a life sentence for juveniles who are convicted of murder. *See* Commonwealth's brief at 14 (citing *Commonwealth v. Anderson,* 224 A.3d 40, 47 (Pa.Super. 2019) (holding no *de facto* life sentence was imposed for offender who will be eligible for parole at age sixty-seven)).

his victims for their injuries, stating "it's not my fault they didn't have their seatbelts on." N.T. Sentencing, 8/19/22, at 16.

Appellant has presented no basis for us to conclude that the trial court's sentence is the product of an abuse of its considerable discretion. Accordingly, we have no cause to disturb it.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>October 11, 2023</u>